UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LEROY ANDERSON,

        Petitioner,                                Civil No. 05-10194
                                                            Honorable David M. Lawson
v.

ANDREW JACKSON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Michael Leroy Anderson, presently confined at Mound Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner stands convicted of two counts of first-degree criminal sexual conduct, first-degree home invasion, and nineteen counts of illegal use of another person's financial transaction device. He was sentenced as an habitual offender to concurrent terms of life imprisonment for criminal sexual conduct, thirty to sixty years for the home invasion, and five to fifteen years for the illegal use of a financial transaction device. The petitioner alleges that he is incarcerated in violation of his constitutional rights to effective assistance of counsel, to confront the witnesses against him, and to a fair trial. The respondent has filed an answer to the petition, asserting that the petitioner's claims are procedurally defaulted because the petitioner failed to raise his claims on direct appeal. The Court determines that the petitioner's claims are not procedurally defaulted, but they lack merit. Therefore, the habeas petition will be denied.

I.

The petitioner was charged in Ingham County, Michigan with two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(c) (sexual penetration during the commission of another felony), one count of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and nineteen counts of illegal use of a financial transaction device, Mich. Comp. Laws § 750.157p. The charges arose from a home invasion in Lansing Township. The intruder raped the female resident of the home and subsequently used her ATM card.

The victim testified at trial that she fell asleep about 10:30 p.m. on Sunday, August 23, 1998. She awoke when a man placed his hands on her shoulders and told her not to scream or he would kill her. The man put duct tape on her mouth, bound her hands with nylon ties, and placed a towel over her head. Then he pulled her out of bed and ushered her into the bathroom. After he asked where she kept her money, she heard noises that sounded like he was looking for something. He subsequently returned to the bathroom where he penetrated her vagina with a soft object and then with his penis. Her purse and other items were missing after the man left the premises.

Detective Sergeant John Draganchuk testified at a pretrial motion to suppress evidence

> that he obtained a description of the victim's assailant after speaking with her on August 25, 1998.[1] Because the victim's head was covered by a towel for part of the assault, she was able to give a limited description of her attacker. However, she described her attacker as having a slight build, wispy, curly brown hair, blue eyes, and further recalled that he smelled strongly of cigarette smoke.
>
> As part of his investigation, Draganchuk also obtained films from video surveillance cameras at four different financial institutions where the assailant used the victim's automatic teller machine (ATM) card to withdraw funds in the hours following the assault. After reviewing the films, Draganchuk was able to discern distinct charac-

---

[1] The assault occurred on August 23, 1998.

teristics of the assailant's vehicle. Draganchuk determined over twenty identifying characteristics of the vehicle,² such as pieces of paper on the vehicle's dashboard, and an elliptical shaped item hanging from the rear-view mirror. Draganchuk subsequently met with a representative from a local Ford dealership who confirmed that the vehicle on the films was a Ford Ranger from the period of the late 1980s to 1992 because it did not have a driver's side airbag. Draganchuk also observed that the assailant was of small stature, and although he wore a face mask, his hair was curly.

On September 23, 1998, Draganchuk observed a vehicle matching the specific description of the one in the films traveling within a mile of the victim's home, and noted that the driver matched the description of the suspect given by the victim. Specifically, the driver had a slight build and curly hair, and the vehicle had papers on the dashboard and an elliptical shaped object hanging from the rearview mirror. After conducting a LIEN check, Draganchuk further discovered that defendant was the owner of the vehicle, and that defendant had a slight build and blue eyes, as described by the victim.

---

² These included that (1) the vehicle was a light-colored or silver pick-up truck, (2) with an oval Ford emblem on the rear tailgate, (3) the steering wheel did not have an airbag, (4) the vehicle had standard automobile size, rather than truck size, side view mirrors, (5) the vehicle had a black bed liner, and (6) a black plastic tool box extending the entire width of the back bed.

*People v. Anderson*, No. 224031, 2001 WL 1511839, at *2 (Mich. Ct. App. Nov. 27, 2001) (unpublished) (footnotes in original). The police searched the petitioner's home where they found the victim's purse, a dildo, and a mask. A witness testified at trial that the dildo contained the victim's DNA.

The petitioner denied entering the victim's home, assaulting her, or using her ATM card. He testified that on the night of the assault, he went to the store for a splint because his hand was bothering him. After leaving the store and returning to his vehicle, he noticed a white plastic bag in the bed of his truck. He assumed that some college students who had parked next to him tossed the bag in his truck. He later discovered that the bag contained a woman's purse, a mask, and a dildo.

-3-

The jurors apparently did not believe the petitioner's version of the facts, for they convicted him as charged. On September 24, 1999, the trial court sentenced the petitioner as a habitual offender to life imprisonment for the criminal sexual conduct, thirty to sixty years for the home invasion, and five to fifteen years for the illegal use of a financial transaction device.

In his direct appeal, the petitioner alleged that the searches of his home and vehicle were illegal. He also argued that the trial court erred in denying his challenge of a juror for cause. The Michigan Court of Appeals affirmed the petitioner's convictions, *see ibid.*, and on July 29, 2002, the Michigan Supreme Court denied leave to appeal, *see People v. Anderson*, 467 Mich. 853, 650 N.W.2d 338 (July 29, 2002) (Table).

The petitioner raised his habeas claims in a motion for relief from judgment, which the trial court denied in a reasoned opinion on December 1, 2003. The petitioner appealed the trial court's decision, but the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Anderson*, No. 254553 (Mich. Ct. App. Aug. 20, 2004); *People v. Anderson*, 472 Mich. 912, 696 N.W.2d 713 (May 31, 2005) (Table).

The petitioner filed his habeas corpus petition on August 1, 2005. His grounds for relief, as stated in a supporting brief, read:

> I. Petitioner was denied due process and a fair trial when the State did not disclose that his star witness['s] testimony was false about the DNA analysis.
>
> II. Petitioner was denied his Constitutional right to "confront" the person who actually did the DNA test - rather than the person who testified.
>
> III. The DNA test in this case did not meet the "general acceptance" standard employed for admission of scientific evidence.

IV. The petitioner was denied due process and a fair trial when the State introduced "other acts" evidence to the jury.

V. Petitioner's trial counsel was ineffective within the meaning of the Sixth Amendment to the United States Constitution.

II.

The respondent argues in an answer to the habeas petition that the petitioner procedurally defaulted his claims by not raising them in his direct appeal. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Federal habeas courts may not consider a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The procedural rule in question here is Michigan Court Rule 6.508(D)(3), which prohibits state courts from granting relief from judgment if the defendant alleges nonjurisdictional grounds that could have been raised on appeal from the conviction or sentence, unless the defendant demonstrates cause and prejudice. Both the Michigan Supreme Court and the Michigan Court of

Appeals denied the petitioner's applications for leave to appeal his claims on the basis of Rule 6.508(D). The respondent therefore maintains that habeas review of the petitioner's claims is precluded.

> Whether a state court has actually enforced a procedural sanction depends on whether "the last state court from which the petitioner sought review . . . invoked the state procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims." *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). In *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), the Supreme Court held that, where the last state court decision is silent or unexplained as to its reasons for not granting relief, the federal court may "look through" that judgment and assume that it relied on the last reasoned judgment issued in the course of the petitioner's state appeals. That prior judgment's rationale is then taken as the state court's basis for denying relief. *Id*.

*Ivory v. Jackson*, 509 F.3d 284, 291-92 (6th Cir. 2007).

The last state court to review the petitioner's claims was the Michigan Supreme Court, which denied leave to appeal for failure "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Anderson*, 472 Mich. 912, 696 N.W.2d 713 (May 31, 2005) (Table). The Michigan Court of Appeals denied relief for the same reason.

The United States Court of Appeals for the Sixth Circuit has determined that a state court order denying relief under Rule 6.508(D) is a sufficient explanation for federal district courts to conclude that the order was based on a state procedural bar, which precludes habeas review of the underlying claims. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 405-09 (6th Cir. 2000). However, in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), the Sixth Circuit determined that the petitioner's claims were not procedurally defaulted, despite the Michigan Supreme Court's reliance on Rule 6.508(D), because the trial court and the Michigan Court of Appeals adjudicated Abela's claims on the merits instead of invoking a procedural bar. *Id.* at 923.

This case is more like *Abela* than *Simpson* or *Burroughs* because the trial court issued a reasoned opinion in which it adjudicated the merits of the petitioner's claims, instead of invoking the procedural bar of Rule 6.508(D). The Court therefore concludes that the petitioner's claims are not procedurally defaulted. The Court will proceed to analyze the petitioner's claims, using the following standard of review.

III.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this

Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

> clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner asserts that he was denied due process and a fair trial because the prosecution failed to disclose that the testimony of Dr. Julie Howenstine, a forensic scientist for the Michigan State Police, was false. The trial court adjudicated this claim and was unpersuaded that Dr. Howenstine presented perjured testimony.

"[W]hen police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight." *Banks v. Dretke*, 540 U.S. 668, 675-76 (2004). "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Exculpatory evidence within the meaning of *Brady* includes information about false testimony. "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the

jury.'" *Giglio*, 405 U.S. at 154 (quoting *Napue*, 360 U.S. at 271); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).

There are three components to a true *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985)).

The allegedly false testimony in this case was Dr. Howenstine's statement that she took a swab from the dildo found in the petitioner's home. The petitioner claims that following his trial, he acquired documentation demonstrating that Glenn Moore, not Julie Howenstine, took swabs from the dildo. The petitioner maintains that the prosecutor (1) failed to disclose that Glenn Moore swabbed the dildo and (2) failed to reveal that Julie Howenstine's testimony was false. The petitioner asserts that he could have used the undisclosed evidence to impeach Dr. Howenstine.

Dr. Howenstine implied at trial that she was part of a team of scientists that received and examined evidence obtained from the police. She testified that the dildo was submitted to her, that it was swabbed, and that a slide was prepared from the swab to determine whether DNA was present. She claimed to have been present at the processing of the evidence.

Attached to the habeas petition is a memorandum from Dr. Howenstine to Glenn Moore. The memorandum confirms that the scientists did everything as a group and that Dr. Howenstine

was present at all times. *See* Pet. for Writ of Habeas Corpus, Ex. 2, page 2. Dr. Howenstine apparently supervised the swabbing and examination of the dildo. Thus, the petitioner has failed to show that Dr. Howenstine testified falsely when she stated that she took a swab from the dildo. Although she may not have personally swabbed the dildo, she was involved in the process.

Furthermore, even assuming that the prosecutor failed to disclose Glenn Moore's involvement in the swabbing of evidence, that information was not "material." The identity of the person who did the swabbing was not material to the petitioner's guilt or innocence, since the critical issue was the result of the test, which revealed the victim's DNA on the dildo found in the petitioner's home. There is no reasonable probability that the result of the trial would have been different had the prosecutor revealed that Glenn Moore did the actual swabbing. The petitioner's *Brady* claim therefore has no merit.

B.

The petitioner alleges in a related claim that Dr. Julie Howenstine's testimony describing the results of DNA testing was inadmissible hearsay. The trial court held on post-conviction review of this claim that no error occurred in admitting Dr. Howenstine's testimony.

Although hearsay is not admissible under the Michigan Rules of Evidence, *see* Mich. R. Evid. 802, "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The petitioner's constitutional claim alleges that he was denied his

constitutional right to confront Glenn Moore, who took swabs from evidence submitted by the police and prepared the swabs for DNA testing.

"The Sixth Amendment guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.' U.S. Const. amend. VI." *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006). The Amendment applies to state court proceedings, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), and it "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination," *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).

Since the petitioner's trial, the interpretation of the Confrontation Clause has undergone a radical transformation. *See Crawford v. Washington*, 541 U.S. 36 (2004). The petitioner's reliance on *Crawford*, however, is misplaced because *Crawford* was decided after the petitioner's conviction became final, and it is not retroactive to cases already final on direct review. *Whorton v. Bockting*, __ U.S. __, __, 127 S. Ct. 1173, 1177, 1181 (2007); *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). This Court, therefore, must examine the petitioner's claim of constitutional trial error under the law in effect at the time of the petitioner's direct appeal.

As of that time, the Supreme Court had held that the right of confrontation does not require "an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant. Instead, . . . the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). There is no "hearsay" issue as such in this case, however, because there was no out-of-court statement concerning the DNA evidence that was admitted at trial. Rather, the petitioner complains that he was not permitted to cross-examine the

person who actually prepared the swabs from the dildo, although Dr. Howenstine testified that she was present when the swabs were taken and the petitioner had a full opportunity to cross-examine her.

The only evidence at trial concerning preparation of the swab came from the verbal testimony of Dr. Howenstine. It does not appear that affidavits or reports describing the process of sample preparation were admitted. Dr. Howenstine described what she observed, and she provided sufficient evidence from which a reasonable fact finder could conclude that she actually observed the process, and therefore she had personal knowledge of the facts she described. That was sufficient to satisfy Michigan Rule of Evidence 602, and the state trial judge held as much in his opinion denying the motion for post-conviction relief.

Glenn Moore did not testify at the petitioner's trial, but the record does not indicate whether he was actually unavailable as a witness. That is of no moment here, however, becasue no out-of-court statement by Moore was offered in evidence, and he provided no evidence against the petitioner. Therefore, even if the petitioner was unable to call and cross-examine Moore regarding his involvement in the case, there was no violation of the Confrontation Clause because Moore was not a witness against the petitioner. Even assuming that Glenn Moore was unavailable as a witness, Dr. Howenstine's testimony of what Moore did could not violate the petitioner's right to confront witnesses because Howenstine was the witness against the petitioner and the petitioner's right to confront her was fully vindicated at trial.

C.

The petitioner alleges next that the DNA test used in his case did not meet the "general acceptance" standard set forth in *People v. Young*, 418 Mich. 1, 340 N.W.2d 805 (1993), for the

admission of scientific evidence. However, an error of state law is not a ground for habeas corpus relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). An evidentiary ruling violates a criminal defendant's due process rights only when it is "so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The petitioner's reliance on *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993), also is misplaced, because *Daubert* was concerned with the Federal Rules of Evidence, which are not relevant to the petitioner's state conviction. *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998). Moreover, Dr. Howenstine testified that the Michigan State Police Laboratory used a number of checks and balances to confirm that standard procedures were used when performing the DNA analysis. In addition, Dr. Nibedta Mahanti testified that the procedures she followed when performing a DNA analysis of the evidence corresponded with national guidelines.

The petitioner has failed to show that the alleged evidentiary error rose to the level of a federal constitutional claim warranting relief. Therefore, the trial court's conclusion that no error occurred was objectively reasonable.

D.

The petitioner next alleges that he was denied due process and a fair trial when the prosecution elicited testimony that he had been stalking the victim. The petitioner asserts that there

was absolutely no evidence of stalking, and the testimony was prejudicial because the jury could have concluded that stalkers have a tendency to commit the crime of rape.

The victim testified that her assailant asked her where she went on weekends and he stated that he had been watching or stalking her. Thus, contrary to the petitioner's assertions, there was evidence of stalking.

Furthermore, to the extent that the stalking was "other bad acts" evidence, the United States Court of Appeals for the Sixth Circuit has explained that

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court decision holding that the admission of similar acts evidence violates the Constitution, the state court's decision – that the evidence was relevant and admissible – cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d).

E.

The petitioner's fifth and final claim alleges ineffective assistance of trial counsel. The trial court adjudicated this claim and determined that no error was made.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's

representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance means simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688 ).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

1.

The petitioner alleges that trial counsel failed to contest an invalid in-court identification of him. The victim failed to identify the petitioner before trial. In fact, she picked someone out of a photographic array even though the petitioner's picture was not included in the array, and she identified someone other than the petitioner at the line-up. She stated at trial that she saw the petitioner at the preliminary examination, but she admitted on cross-examination that she had not identified him during trial as the person who entered her apartment on August 23, 1998.

Consequently, there is no factual basis for the petitioner's claim that the victim identified him. He misconstrues the record. Because there was no identification of the petitioner, there was no basis for defense counsel to object, and there could be no deficient performance that resulted.

2.

The petitioner contends that his attorney should have objected to the introduction of evidence that he stalked the victim. The victim's testimony about the petitioner's comment that he had been stalking her was a minor part of the trial. Detective John Draganchuk also mentioned that the petitioner had stalked the victim, but Draganchuk made the comment to explain why the police seized a pair of binoculars from the petitioner's vehicle. The Court concludes from the relatively insignificant testimony about stalking that defense counsel's failure to object did not amount to deficient performance and, even if it did, the deficiency did not prejudice the defense.

The Court concludes that the state trial judge's finding that the petitioner received the assistance of counsel that the Sixth Amendment requires was a reasonable application of *Strickland*.

IV.

The state court's decision in this case was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Therefore, the petitioner has not shown that he is in custody in violation of the Constitution or the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk#1] is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 24, 2008.

                                s/Felicia M. Moses
                                FELICIA M. MOSES